# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| THINK PRODUCTS, INC., | )<br>)|
| Plaintiff, | )<br>) No. 18-cv-07506 |
| v. | )<br>) Judge Andrea R. Wood |
| ACCO BRANDS CORPORATION and<br>ACCO BRANDS USA, LLC, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Think Products, Inc. has sued Defendants ACCO Brands Corporation and ACCO Brands USA, LLC, alleging that a series of products manufactured and sold by Defendants infringes upon two of Think Products' patents: U.S. Patent Nos. 9,562,375 (the "'375 patent") and 10,125,523 (the "'523 patent"). Defendants contend that Think Products is collaterally estopped from pursuing this action because of a ruling from the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("PTO"). That ruling, which was subsequently affirmed by the United States Court of Appeals for the Federal Circuit, invalidated two similar Think Products patents (U.S. Patent Nos. 8,7717,758 (the "'758 patent") and 8,837,144 (the "'144 patent")) for obviousness. Defendants assert that the '375 and '523 patents present an identical issue of obviousness that cannot be relitigated in this Court. Now before the Court is Defendants' motion for summary judgment of invalidity. (Dkt. No. 38.) For the reasons explained below, the Court grants Defendants' motion.

**BACKGROUND**

**I.      The Asserted Patents**

This litigation concerns the alleged infringement of two Think Products patents for devices designed to secure portable electronic devices, such as tablets or laptops, to a substantially immoveable object. (Compl., Exs. 1-2 (the '375 Patent and the '523 Patent respectively), Dkt. Nos. 1-1, 1-2.) The patents disclose security locking devices for portable electronics. The parties agree that Claim 1 of the '375 Patent is illustrative of the asserted claims by Think Products. Moreover, the claims asserted in the '375 patent and the '523 patent, the parties' arguments regarding those patents, and the final decisions from the PTAB with respect to those patents are all substantially similar in their description of the claims. The parties do not appear to dispute this. (*See* Defs.' Statement of Material Facts ("DSOMF") ¶ 33, Dkt. No. 40.) The same is true of the '758 patent and the '144 patent. (*See* DSOMF ¶ 7.) Thus, to avoid unnecessary repetition, the Court adopts the approach taken by the parties and focuses on the claims presented in the '375 patent and the '758 patent as illustrative of all the asserted claims. Specifically, the '375 patent discloses in Claim 1:

> a locking assembly for securing an electronic device having a housing to a substantially immoveable [*sic*] object, the locking assembly comprising:
>
> a locking member having a locking end that protrudes from the housing of the electronic device for locking use; and,
>
> a locking device with a locking mechanism configured with an opening to receive the locking end of the locking member to actuate the locking mechanism, securely grasping the locking end for engaging and locking the locking member and the electronic device to the locking device,
>
> wherein the locking member is received in the opening in the locking device to actuate the locking mechanism upon insertion solely by an axial movement.

(Defs.' Mot. for Summ. J, Ex. 1, '375 Patent at 19, Dkt. No. 39-1.) The '523 patent discloses a similar locking mechanism. (Defs.' Mot. for Summ. J, Ex. 2, '523 Patent at 19, Dkt. No. 39-2.)

Defendants manufacture a series of laptop locks, called ClickSafe computer products, that include a cable for attaching a portable electronic device to substantially immoveable objects, such as tables. (DSOMF ¶ 32.) Think Products has sued Defendants, claiming that these products infringe upon the inventions claimed by Think Products in the '375 patent and the '523 patent. In addition to their Answer to Think Products' Complaint, Defendants have asserted four counterclaims seeking declaratory judgments of invalidity and unenforceability with respect to the '375 and '523 patents. (Dkt. No. 34.) Early in this case, prior to the completion of discovery or claim construction proceedings, Defendants moved for summary judgment on a theory of collateral estoppel. (Dkt. No. 38.) That issue is now before the Court.

II.     **The PTAB and Federal Circuit Proceedings**

As the assertion of a collateral estoppel defense suggests, the current case is not the first instance of litigation between these parties. On November 12, 2014, Think Products sued Defendants for patent infringement in the Eastern District of New York with respect to the '758 and '144 patents. *See Think Prod., Inc. v. ACCO Brands Corp.*, No. 14-cv-6659, 2019 WL 5694131, at *2 (E.D.N.Y. July 22, 2019). Together, the '758 and '144 patents "comprise a cable whereby one end is attached to an immovable object such as a desk, and the opposite side is outfitted with a locking device that grasps a protruding rod housed in the device, locking the device when inserted to safeguard against theft." *Id*. at *1. The parties agree that Claim 1 of the '758 patent is illustrative of the claims made in both the '758 and the '144 patents that Defendants challenged in the Eastern District of New York. That claim discloses:

> A locking assembly for securing a portable electronic device having at least one housing to a substantially immovable object, the locking assembly comprising:

> a captive security rod having a locking end and an anchoring end, wherein the anchoring end is passed through the at least one housing to anchor the captive security rod thereto;
>
> said captive security rod partially in said at least one housing and partially out of said at least one housing during and before locking use; and
>
> a locking device with a locking mechanism, wherein the locking device is configured with an opening to receive the locking end of the captive security rod to activate the locking mechanism, where the activation causes the locking mechanism to securely grasp the locking end and thereby lock the security rod and portable electronic device to the locking device.

(Defs.' Mot. for Summ. J, Ex. 6, '758 Patent at 19, Dkt. No. 39-6.)

After Think Products filed suit in the Eastern District of New York, Defendants filed two petitions before the PTAB seeking inter partes review ("IPR") of the patents. Reviewing those petitions, the PTAB invalidated both patents as being obvious over a combination of two prior art references: U.S. Patent Nos. 6,360,405 (known as "McDaid") and 5,829,280 (known as "Chen"). (Oct. 11, 2016 Final Written Decision of the PTAB Concerning IPR of the '758 Patent (the "'758 PTAB Decision") at 15–24, Dkt. No. 39-7; Oct. 11, 2016 Final Written Decision of the PTAB Concerning IPR of the '144 Patent (the "'144 PTAB Decision") at 15–21, Dkt. No. 39-14.) The PTAB found that McDaid and Chen, taken together, disclose all the limitations, or selected elements or steps implementing an invention, of the challenged claims in the '758 and '144 patents. In particular, McDaid disclosed a locking assembly for securing an electronic device to an immoveable object, while Chen disclosed a lock that automatically locks itself upon the insertion of a lock head into a locking device. The PTAB concluded that a person having ordinary skill in the art ("POSA") would have been motivated to combine McDaid and Chen for two reasons: (1) automatically activated locks are more advantageous than key-activated ones, and (2) Chen's automatic lock was suitable for use in McDaid's assembly. *Think Prod., Inc. v.*

*ACCO Brands Corp.*, 722 F. App'x 1031, 1035 (Fed. Cir. 2018).[1] In making its findings, the PTAB expressly dismissed Think Products's contention that McDaid taught away from (*i.e.*, described a solution to a problem in a way that excludes a particular alternative) a combination with Chen. *Id.* at 1037. On appeal, the Federal Circuit affirmed the PTAB's decision, holding that the challenged claims were unpatentable as obvious over the combination of the prior art references of McDaid and Chen. *Id.* at 1031.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, "a party may move for summary judgment, identifying each claim or defense—or part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. In determining whether there is a genuine factual issue for trial, the Court must view all evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmovant. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). But the genuineness of a dispute suffices to defeat a motion for summary judgment only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 842 (7th Cir. 2004).

Here, Defendants seek summary judgment in their favor based on the doctrine of collateral estoppel. Since collateral estoppel is an affirmative defense, Defendants bear the burden of proof. *Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009) (collateral estoppel

---

[1] *Think Products* is an unpublished Federal Circuit order issued after January 1, 2007. Federal Circuit Local Rule 32.1(d) provides that nonprecedential dispositions are not considered binding precedent for that Circuit. But Federal Circuit Local Rule 32.1(c) further makes clear that parties are not precluded from relying on nonprecedential dispositions for purposes of "claim preclusion, issue preclusion, judicial estoppel, law of the case and the like."

5

is an affirmative defense); *Employers Ins. of Wausau v. Titan Int'l., Inc.*, 400 F.3d 486, 490 (7th Cir. 2005) (defendants bear the burden of proof on their affirmative defenses). Also known as issue preclusion, collateral estoppel protects a party from having to re-litigate issues that have already been fully litigated in a previous action and adversely resolved against a party-opponent. *Chicago Truck Drivers v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997); *see also Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).[2] Collateral estoppel applies when (1) the issue litigated is the same as one involved in a prior action; (2) that issue was actually litigated in the first action; (3) the determination of the issue was essential to the final judgment in the first action; and (4) the party against whom collateral estoppel is invoked had a full and fair opportunity to litigate the issue in the first action. *Chicago Truck Drivers*, 125 F.3d at 530. Collateral estoppel may be invoked with respect to administrative decisions made by the PTAB. *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (7th Cir. 2018), *see also Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351 (Fed. Cir. 2018). And Federal Circuit "precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood*, 735 F.3d at 1342; s*ee also ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1274 (Fed. Cir. 2018) ("Collateral estoppel may bar litigation in cases with different but related patents when there are common issues.").

The relevant issue concerns obviousness. Under 35 U.S.C. § 103(a), a claim is unpatentable when "the differences between the subject matter sought to be patented and the

---

[2] While Seventh Circuit law governs the application of general collateral estoppel principles for this case, Federal Circuit precedent applies with respect to substantive issues with "special or unique application to patent cases." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).

prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007). Obviousness is a legal question based on underlying factual determinations, such as "the scope and content of the prior art, differences between the prior art and the claims at issue, the level of ordinary skill in the pertinent art, and any objective indicia of non-obviousness." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013). To demonstrate obviousness based on a combination of prior art references, the party challenging a patent must show that all the elements of the claims were disclosed in the prior art and that a POSA would have had motivation or reason to combine the disclosures of the prior art references. *KSR*, 550 U.S. at 418–22.

Of the four elements of collateral estoppel, only two are disputed before the Court today: whether the issue litigated is the same as the one involved in the prior action and, to the extent the issue is the same, whether determination of that issue was essential to the final judgment in the first action. As discussed in greater detail below, this Court finds that the obviousness issue raised here is the same as the one litigated in the PTAB proceedings. There can be no dispute that the obviousness issue was actually litigated in the first action: both the PTAB and Federal Circuit opinions explicitly detail the arguments presented by both parties and the conclusions reached by the respective adjudicators. Nor can Think Products contend it lacked a full and fair opportunity to litigate the issue in the prior action. Indeed, Think Products does not contend otherwise. Instead, Think Products argues that the obviousness issue presented in the prior action is not the same issue as presented here, and in any case, the obviousness issue was not essential to the judgment in the prior action. The Court will address each argument in turn, beginning with the question of whether there is an identity of the issues.

That inquiry hinges on the conclusions reached by the PTAB (and affirmed by the Federal Circuit) that the '758 and '144 patents were invalid for obviousness. This Court concludes that the issue of obviousness determined in those prior proceedings is identical to the issue of obviousness presented by the asserted claims of the '375 and '523 patents. Specifically, the Court notes that the language used in the '375 and '523 patents closely parallels language used in the invalidated patents. For instance, in Claim 1[a], the '758 patent purports to describe a "locking assembly for securing a portable electronic device having at least one housing to a substantially immovable [sic] object." ('758 Patent at 19.) Patent '375 copies this description almost word-for-word in its Claim 1[a], merely omitting the word "portable" before electronic device and changing "at least one housing" to "a housing." ('375 Patent at 19.) Neither modification changes the nature of what is being described. The same is true for other language differences between the two patents. For example, Claim 1[b] of the '758 patent discloses a "captive security rod having a locking end and an anchoring end," while Claim 1[b] of the '375 refers to a "locking member with a locking end." ('758 Patent at 19; '375 Patent at 19.) But this is a distinction without a difference, as other language used throughout the '375 patent, such as in Claims 3–4, describes the locking member as a "rod" that "engages" to another object. ('375 Patent at 20.) And as discussed below in greater detail, if anything, the text suggests that "captive security rod" is a narrower term than what is described in the '375 patent.

In describing the subject locking device, both patents disclose a locking device designed to grasp an electronic device for locking use and configured with an opening to receive the locking end of the locking member to actuate the locking mechanism. The striking similarity in language matters because the PTAB found that it was precisely that sort of language that made the '758 and '144 patents invalid for obviousness. The PTAB concluded that the claims

8

presented by the '758 and '144 patents were already disclosed by McDaid and Chen: McDaid disclosed a locking assembly for use with a security slot found on many portable electronic devices and Chen disclosed a cable lock assembly with a lock that automatically activates when a locking bar is inserted into the locking device. ('758 PTAB Decision at 25, 27.) Taken together, McDaid and Chen disclosed all the limitations of the '758 and '144 patents. McDaid disclosed an anchor rod that securely attached to a portable electronic device and a tether with a fastening device that locks onto that anchor rod with a key. Chen taught insertion locking for similar cable locking assemblies. The PTAB found that a POSA would have been motivated to combine McDaid's overall assembly with Chen's more advantageous automatic lock. (*Id*. at 32.) So the idea of a locking assembly for securing a portable electronic device to a substantially immoveable object using an automatic lock—which is what is disclosed in the '375 and '523 patents at issue here—is obvious over the very same combination of prior art references found in the PTAB decision with respect to the '758 and '144 patents.

In arguing to the contrary, Think Products contends that Defendants overlook language that distinguishes the patents at issue in this case from the invalidated ones. Indeed, the '375 patent does contain different language from the '758 patent. However, the Court finds that the new language does not materially differentiate the '375 patent's claims from the '758 patent's claims.

First, Think Products notes that the '758 patent discloses "a captive security rod having a locking end and anchoring end," whereas the '375 patent discloses "a locking member having a locking end." (Patent '758 at 19; Patent '375 at 19.) But the minor difference in the language used to describe the claims does not make them materially different. Both patents describe a locking member that protrudes from the housing of an electronic device for the purpose of

locking. And both disclose a locking assembly with one locking end that protrudes from the housing of an electronic device for the purpose of locking the device. Moreover, in summarizing the invention's potential embodiments in the '375 Patent, Think Products explicitly describes the locking assembly as including a captive security rod, noting that the assembly includes "means for securing the locking device and, therefore, the captive security rod and portable electronic device to which the captive security rod is anchored, to a substantially non-movable object." (Patent '375 at 5.) Think Products goes on to describe the captive security rod as containing an extending knob or protruding end that anchors the rod to the portable electronic device. (*Id*. at 5–6.) Again, this is precisely the same sort of locking device described in the invalidated '758 patent. *See* Patent '758 at 5 (describing the locking end of the captive security rod as comprising an extending knob for the purpose of anchoring the rod). Additionally, the '375 patent explicitly describes the "locking member" as a rod engaged or secured to a substantially immovable object. (Patent '375 at 20.) Since language elsewhere in the claim provides context and a more detailed explanation as to what a locking member is, the Court can quite readily understand that the locking member is a rod that anchors the lock to a stationary object, just as a captive security rod does. There is therefore no reason to conclude, as Think Products asserts, that the "captive security rod" disclosed in the '758 patent is mutually exclusive from the "locking member with a locking end" that the '375 patent discloses.

Next, the Court notes that the language in Claim 1[b] of the '375 patent omits language included in the '758 patent to describe how the captive security rod passes through the housing to anchor and secure the captive security rod. While the '758 patent describes the captive security rod as including an anchoring end "passed through at least one housing to anchor the captive security rod," the '375 patent does not disclose an anchoring end in Claim 1[b]. However, the

'375 patent contains other language throughout the claim describing how the locking assembly is engaged or secured. (*See* Patent '375 at 20). Simply moving the relevant language to a different part of the claim does not materially change the invention described in the '375 patent to make it different from the one disclosed in the '758 patent.

There are other slight differences in the language of the '375 patent. In Claim 1[a], for instance, the word "portable" is omitted in describing the type of electronic device to be secured, and the electronic device in question is described as having "a housing" instead of "at least one housing" as in the '758 patent. ('758 Patent at 19; '375 Patent at 19.) But changes like these are entirely immaterial in differentiating the patents—other language in the '375 patent clearly describes its purpose in securing portable electronic devices, and "a housing" and "at least one housing" describe precisely the same sort of object. Even if the slight difference in language used throughout the claims left any confusion, the illustrations provided in both patents quite clearly depict embodiments of a locking device that uses precisely the same locking mechanism to secure a portable electronic device to a substantially immoveable object. The new '375 patent's claims do not meaningfully alter that function. Therefore, the new language in the '375 patent's claims does not render those claims materially different from the invalidated '758 patent's claims.

Moreover, while the '375 patent omits the '758 patent's description of an anchoring end in addition to the locking end of the locking device, that does not mean the '375 patent describes a materially different device. Rather, the implication is that the '375 patent makes a ***broader*** claim with respect to the same device. And broader claims are invalid where the PTAB has found narrower claims to be obvious. *See Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007) ("Because claims 10 and 17 were found to have been obvious, the broader

11

claims 1 and 11 must also have been obvious."). In sum, the Court finds that the '375 and '523 patents disclose claims that are identical to or broader than the '758 and '144 patents. Because Think Products has failed to explain how the differences in claim language change the invalidity analysis, summary judgment of invalidity based on collateral estoppel is appropriate. *See Ohio Willow*, 735 F.3d at 1343.

Think Products also contests the third element of the collateral estoppel defense: that the determination of the obviousness issue was essential to the final judgment in the PTAB proceedings. "A determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009). But the requirement that a finding be necessary to a prior judgment "does not mean that the finding must be so crucial that, without it, the judgment could not stand. Rather, the purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *Mother's Restaurant, Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1571 (Fed. Cir. 1983).

Think Products suggests that even if the obviousness issue argued here is the same as the one litigated in the prior action, the PTAB's resolution of that issue was not essential to the original judgment because there were alternative grounds for invalidation. It is true that the PTAB also found the '758 and '144 patents invalid on the grounds that those patents were not entitled to the benefit of the early filing date Think Products asserted and that the patents were anticipated by a ClickSafe promotional video. ('758 PTAB Decision at 23–24.) But the determination that the patents were obvious over a combination of prior art references was the primary basis for the finding of invalidity and sufficient on its own to support that conclusion.

12

Moreover, the Federal Circuit explicitly noted in affirming the PTAB's determination of obviousness that it "need not reach the Board's determination of anticipation, which constitutes an alternate ground of unpatentability." *Think Prod.*, 722 F. App'x at 1033 n.1. Simply put, that the PTAB found an additional reason why the '758 and '144 patents were invalid does not mean that the reason of obviousness was not essential to its ruling. *See also Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250 (Fed. Cir. 2019) (noting that "a tribunal's resolution of an issue that is only one part of an ultimate legal claim can preclude the loser on that issue from later contesting, or continuing to contest, the same issue in a separate case").

Finally, Think Products invokes judicial estoppel in contending that in the previous litigation, Defendants advocated a claim construction for the term "captive security rod" that differs from a construction offered in the current matter. Three factors typically determine whether the Court should apply judicial estoppel in a particular instance: first, "a party's later position must be clearly inconsistent with its earlier position;" second, the party must have "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and third, "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

Here, Think Products asserts that in the earlier litigation, Defendants defined a "captive security rod" as necessarily ***not*** containing a locking end. Because the '375 and '523 patents disclose a locking member with a locking end, Think Products argues that these claims necessarily cannot encompass the inventions described in the '758 and '144 patents, which

13

disclose a captive security rod (and therefore cannot have a locking end). This argument is directly at odds with the conclusions reached by the PTAB, however, which explicitly determined that the '758 patent required a captive security rod with an anchoring end *and* a locking end. ('758 PTAB Decision at 20.) But even if the PTAB had not made a factual determination as to what constitutes a captive security rod, Think Products's argument is meritless because it fails to characterize Defendants' argument correctly. Indeed, Defendants appear to have been making precisely the *opposite* argument: they contended that a particular rod that comprised the invention could not be a captive security rod precisely because it failed to include a locking end. (Pl.'s Aff. in Opp'n to Defs.' Mot. for Summ. J., Ex. 4, Pet.'s IPR Reply Brief at 11, Dkt. No. 52-4.)

In short, this Court concludes that the issue of whether the asserted claims of the '375 and '523 patents are unpatentable as obvious over the prior art was actually litigated before and necessarily decided by a prior adjudication before the PTAB and the Federal Circuit. Think Products had a full and fair opportunity to press the arguments it is making in this case in the earlier proceedings. The PTAB and the Federal Circuit ruled against Think Products. Think Products is therefore collaterally estopped from arguing here that the asserted claims of the '375 and '523 patents are valid. The Court therefore grants summary judgment in favor of Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment of invalidity (Dkt. No. 38) is granted.

ENTERED:

Dated: December 5, 2019

Andrea R. Wood
United States District Judge